IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SANDRA LAUREEN WARD,

No. 3:14-cv-01162-HZ

                Plaintiff,

OPINION & ORDER

    v.

CAROLYN COLVIN,
Acting Commission of Social Security,

                Defendant.

Merrill Schneider
Schneider Kerr & Gibney Law Offices
P.O. Box 14490
Portland, OR 97293

        Attorney for Plaintiff

//
//
//

1 - OPINION & ORDER

Billy J. Williams
Acting United States Attorney, District of Oregon
Janie E. Hebert
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97201

Heather L. Griffith
Special Assistant United States Attorney
Social Security Administration
SSA Office of General Counsel
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

        Attorneys for Defendant


HERNÁNDEZ, District Judge:

        Plaintiff Sandra Laureen Ward brings this action under the Social Security Act ("Act"),

42 U.S.C. § 405(g), for judicial review of the Commissioner of Social Security's final decision

denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act and

Supplemental Security Income (SSI) under Title XVI of the Act. After accounting for post-

hearing evidence submitted to and considered by the Appeals Council, the conclusion that Ward

is not disabled is no longer supported by substantial evidence in the record as a whole.

Accordingly, the Commissioner's decision is reversed and the case is remanded to the Agency

for further administrative proceedings.

## BACKGROUND

        Ward applied for SSI and DIB on November 4, 2011, alleging an onset date of December

31, 2008. Tr. 19. The Commissioner denied both applications, and Ward requested a hearing

before an Administrative Law Judge ("ALJ"). Tr. 19. After a hearing in January of 2014, ALJ

Paul Robeck found Ward was not disabled. Tr. 16–30. Ward appealed and submitted a new

report from a consulting psychologist, but the Appeals Council denied her request for review, making ALJ Robeck's ruling the Commissioner's final decision that Ward now challenges in this Court. Tr. 1–3.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Each step is potentially dispositive. At step one, the presiding ALJ determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; if not, the analysis continues. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis moves to step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At step four, the ALJ determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his or her past relevant work, the analysis moves to step five, where the ALJ determines whether the claimant is able to do any other work in the national economy considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden to show disability rests with the claimant at steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f); Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir. 1999). If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

## ALJ DECISION

At step one, the ALJ found that Ward had not engaged in substantial gainful activity since 2008. Tr. 572. At step two, the ALJ found that Ward had the "following severe impairments: breast cancer, in remission; status post remote traumatic brain injury; depression; personality change following the traumatic brain injury; and obesity[.]" Tr. 21–22. At step three, the ALJ found Ward's impairments did not meet or equal the requirements of a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 22–24. Next, the ALJ found that Ward had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as denied in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to unskilled work. She could no more than occasionally crawl, crouch, balance, stoop, kneel and climb ramps and stairs. She could never climb ladders, ropes or stairs.

Tr. 24 (footnote omitted). At step four, the ALJ found that Ward was capable of performing her past relevant work as a newspaper carrier. Tr. 30. Therefore, the ALJ concluded that Ward was not disabled under the Act. Tr. 30.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42

U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the decision. Andrews, 53 F.3d at 1039–40. A reviewing court must consider the entire record as a whole and cannot affirm the Commissioner by simply isolating a specific quantum of supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

## DISCUSSION

Ward presents a single issue for the Court to consider: "whether the mental RFC is supported by substantial evidence." Pl. Brief at 5. She asserts the following grounds for finding the ALJ erred in assessing her RFC: (1) the ALJ improperly discounted the opinion of consulting examiner Dr. Sharon Labs; (2) post-decision evidence from consulting psychologist Dr. Robinann Cogburn changes the weight of the evidence and makes the ALJ's decision unsupported by substantial evidence in the record; (3) the ALJ did not state the RFC in vocational terms; and (4) that no medical evidence supports the RFC as formulated.

### 1.  Dr. Labs's Opinion

Ward first argues that the ALJ erred in giving little weight to Dr. Labs's 2010 opinion. There are three sources of medical opinion evidence in Social Security cases: treating physicians, examining physicians, and non-examining physicians. Valentine, 574 F.3d at 692 (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). The ALJ can reject the uncontroverted opinion of a treating or examining physician only for "clear and convincing reasons" supported with

substantial evidence in the record. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting

Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Even if a treating or examining doctor's

opinion is contradicted by another doctor, the ALJ can reject it only by providing "specific and

legitimate reasons" that are supported by substantial evidence. Id.

     Dr. Labs performed a consultive psychological examination of Ward in January of 2010.

Tr. 315. She diagnosed Ward with an adjustment disorder with mixed emotional features related

to recurrent breast cancer; a cognitive disorder, not otherwise specified, with a history of

traumatic brain injury and current chemotherapy; personality change following her traumatic

brain injury, with lability and disinhibition; attention-deficit/hyperactivity disorder, inattentive

type by history; and a learning disorder, not otherwise specified, by history. Tr. 329. Dr. Labs

noted that Ward had "difficulty focusing" during testing, and "often told personal stories in a

tangential and rambling manner." Tr. 322. She "gave up quickly on tasks which she perceived to

be too difficult," though with "encouragement, when she attempted tasks, she sometimes could

complet[e] [them] successfully." Tr. 322. Test results placed her intellectual functioning, overall

verbal comprehension, perceptual reasoning, and processing speed in the average range. Tr. 322–

23. Ward scored on the low-average range in tests measuring her language function, her ability

to sustain attention and concentration, and some executive functions, and Dr. Labs noted that her

"ability to respond to performance feedback" and "working memory" were impaired. Tr. 323–

24. Dr. Labs also wrote that is was "possible that [Ward's] chemotherapy . . . and her cold

produced some mild impairment in cognitive functioning." Tr. 327.

     Dr. Labs concluded that "if Ms. Ward's cancer treatment does not significantly produce

further temporary cognitive decline, [it] is recommended that she be placed in a highly structured

position that is well supervised by an individual who understands how to work with individuals

with traumatic brain injuries." Tr. 328. Further, Dr. Labs wrote, Ward "should work in an

environment that minimizes distraction," and "[g]iven her tendency . . . toward tangentiality and

her difficulty in perceiving social cues, she should not work in a position requiring extensive

contact with coworkers or with the public." Tr. 328. Finally, "[g]iven her cognitive, affective and

behavioral impairments, the use of a job coach may be useful in helping her learn new job

skills," and Dr. Labs recommended using "compensatory strategies such as checklists [and] cue

cards." Tr. 328–29.

    The ALJ gave Dr. Labs's opinion "little weight." Tr. 27. The ALJ explained that that the

record did "not support limiting [Ward] to a structured work environment," that the limitation to

unskilled work was "adequate to address any of [Ward's] objective cognitive shortcomings

identified in testing," and that "[f]urther limitations were unwarranted." Tr. 27–28.

    One of the primary reasons the ALJ discounted Dr. Labs opinion was its inconsistency

with Ward's work history. Dr. Labs attributed Ward's limitations to her traumatic brain injuries,

the last of which occurred in 1998. Despite these injuries and the alleged limitations arising from

them, Ward earned over $10,000 in both 2006 and 2007, or "just less than substantial gainful

activity," as a contractor for *The Oregonian* newspaper. Tr. 28, 203–04. Ward testified at the

hearing that she left *The Oregonian* because of her branch was downsized and she did not want

to travel the additional distance to a different location, not because her cognitive functioning

limited her ability to perform the job. Tr. 52–53. An ALJ can discount a physician's opinion

about the disabling effects of an impairment if the record reveals it did not prevent the claimant

from working. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding ALJ's

rejection of physician's opinion was supported by substantial evidence because the claimed

mental limitations existed prior to claimant's graduating high school, obtaining a college degree,

finishing a medical training program, and participating in military training); Wikoff v. Astrue, 388 F. App'x 735, 737 (9th Cir. 2010) (holding that ALJ drew a reasonable inference that claimant could work because she performed substantial gainful activities while "suffering mental impairments as severe as those she suffered . . . after her alleged onset date.").

The ALJ also discounted Dr. Labs's opinion that Ward should be placed in a "highly structured position" with additional limitations based on Ward's demonstrated ability to work in a competitive environment. After she visited with Dr. Labs in January of 2010, Ward worked for a rental car company from December 2010 to October 2011. Tr. 242, 265. She was offered a raise and more hours, but refused because she wanted to maintain eligibility for benefits through the Oregon Health Plan. Tr. 29, 415. The ALJ noted that Ward testified about difficulties getting along with co-workers, but also that she claimed she was terminated for being involved in five collisions, not for problems with interactivity. Tr. 28, 43, 49.

Finally, the ALJ discounted Dr. Labs's opinion that, "[g]iven her tendency [] toward tangentiality and her difficulty in perceiving social cues," Ward should not work in a position that required extensive contact with coworkers or the general public. Tr. 28, 328–29. Although Dr. Labs opined that Ward should be "considered for behavioral treatment to improve her social awareness and skills," the ALJ noted that Ward denied having any difficulty getting along with family, friends, neighbors, or others. Tr. 28, 274. The ALJ found that Ward participated in numerous volunteer activities, including leading a support group for individuals with traumatic brain injuries, and volunteering at a food bank and as a member of a neighborhood emergency response team. Tr. 29. The ALJ stated that Ward was "cooperative and even cordial at the hearing" and that there were "no indications" that she was uncooperative during the consultive examination. Tr. 28.

Based on the evidence in the record at the time, the ALJ's overall interpretation of Dr. Labs's opinion was reasonable. However, as explained more fully below, additional evidence submitted to and considered by the Appeals Council that is now part of the administrative record undermines the ALJ's given reasons for discounting Dr. Labs's opinion. Therefore, the Court cannot now conclude that the ALJ's rejection of Dr. Labs's report is supported by substantial evidence in the record as a whole.

### 2.   Post-Hearing Opinion from Dr. Cogburn

After the ALJ issued his decision that Ward was not disabled, Ward visited psychologist Dr. Robinann Cogburn for an evaluation on February 13, 2014. Tr. 804. She submitted his opinion and the objective testing accompanying it to the Appeals Council after the ALJ denied her application. Tr. 4. The Appeals Council considered Dr. Cogburn's opinion, but concluded that it did "not provide a basis for changing the [ALJ's] decision." Tr. 1–2.

When the Appeals Council considers new material submitted after an ALJ has issued a decision, it becomes part of the administrative record the district court must consider as a whole in determining whether the Commissioner's decision is supported by substantial evidence. Brewes v. Commissioner, 682 F.3d 1157, 1162–63 (9th Cir. 2012).

Dr. Cogburn diagnosed Ward with "[m]ild neurocognitive disorder . . . with deficits in memory and executive function," "[p]ersonality change due to head trauma . . . (with lability, irritability, and disinhibition)," and "persistent depressive disorder, in partial remission." Tr. 814. He noted Ward's "intellectual functioning [was] in the average to low average range," and found that her "mild neurocognitive disorder may give rise to limitations . . . whenever tasks involved complex organization, learning new information, tracking multiple task sequences simultaneously, or inhibiting impulsive responses." Tr. 814–15. He opined that Ward's "capacity

to succeed in competitive employment appears questionable," and noted that "she was not able to succeed in her most recent position [at the rental car company] despite support from a job developer." Tr. 815.

"While Ms. Ward's mild neurocognitive disorder has no[] doubt contributed to occupational difficulties," Dr. Cogburn explained, "barriers of at least equal significance arise from her organically based personality changes." Tr. 814. Ward's "presentation and history suggest very significant difficulties with irritability, disinhibition, and impulsivity," and Dr. Cogburn noted that Ward has "had trouble participating in Vocational Rehabilitation services, functioning as support group leader, and getting along with others at work." Tr. 814. Dr. Cogburn also wrote that Ward's "cognitive difficulties make many tasks (especially those requiring complex organization or learning new information) more difficult for her. She seems to have a tendency to react to such cognitive challenges with impatient, impulsive responses which result in poorer performances." Tr. 814. Finally, Dr. Cogburn concluded that "[t]he combination of cognitive difficulty and impulsive reactions may have contributed to performance problems such as repeated minor accidents at her last work place." Tr. 814.

Ward argues that Dr. Cogburn's opinion "changes the weight of the evidence, and makes the ALJ's decision unsupported by substantial evidence." Pl. Brief at 8. The Commissioner argues that, even considering this new evidence, the ALJ's conclusion that Ward is not disabled is still supported by substantial evidence in the record. The Court finds that Dr. Cogburn's report conflicts with some of the evidence upon which the ALJ based his opinion, and supports important portions of Dr. Labs's opinion that the ALJ discounted as otherwise unsupported in the record. Therefore, after taking Dr. Cogburn's opinion into account, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole.

Dr. Cogburn's conclusion that Ward's personality changes brought on by her numerous traumatic brain injuries—her increased irritability, impulsivity, and irrationality—caused her "trouble . . . getting along with others at work" and could have contributed to her work performance problems conflicts with the ALJ's reasoning that Ward was terminated from the rental car company "based on a history of getting into accidents rather than for problems with interactivity." Tr. 28. Moreover, Ward's testimony at the hearing about the incident that led to her termination from the rental car company is consistent with Dr. Cogburn's analysis. She testified to having difficulty with a co-worker who "called [her] five times in one day." Tr. 49. She said that she "kept turning the phone off and then . . . would turn it back on and he would be on the phone." Tr. 49. She then explained that she "wasn't paying attention . . . [she] was trying to shut the phone off" and then she "hit the back end of a car." Tr. 49. This testimony, with the benefit of Dr. Cogburn's additional analysis of Ward's symptoms, undermines the ALJ's conclusion that Ward did not demonstrate any problems interacting with her co-workers. It also tends to show how her "impulsivity" manifests itself and could lead to problems at work.

Dr. Cogburn also noted that Ward's problems with irritability and disinhibition led to angry outbursts at a support group member and staff at Vocational Rehabilitation. Tr. 805, 814 Again, that conclusion conflicts with one of the reasons the ALJ gave for discounting Dr. Labs's opinion—that the record did not support the conclusion the Ward had trouble interacting with others and should not work in a position requiring extensive contact with co-workers or the general public. Tr. 28.

While portions of Dr. Cogburn's report support Ward's contention that she is disabled, other portions support the ALJ's conclusion that she is not. For instance, Dr. Cogburn characterized several of Ward's problems as "mild," and abilities as "average." Tr. 811, 814. His

recommendations for work restrictions are aimed at how Ward could "succeed most easily" at a job, not whether she is disabled, i.e. unable to perform any work. Tr. 815. "Resolving conflicts and ambiguities in the record is the ALJ's responsibility, and further administrative proceedings are generally appropriate if the ALJ has not had the opportunity to consider significant additional evidence." Gardner v. Colvin, No. 6:12-CV-00755-JE, 2013 WL 3229955, at *14 (D. Or. June 24, 2013) (citing Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000)). The ALJ should have the opportunity to analyze Dr. Cogburn's report, determine whether and to what extent to credit his conclusions about Ward's limitations, and reconsider Ward's application for benefits in light of his opinion.

Ward asks that the Court remand her case for further proceedings, and the Court finds that such a remand is appropriate in this case. Skelton v. Comm'r of Soc. Sec., No. 06:13-CV-01117-HZ, 2014 WL 4162536, at *14 (D. Or. Aug. 18, 2014) (explaining the question whether to remand for additional proceedings turns on the utility of further analysis) (citing Harman, 211 F.3d at 1178).

As a final note, Ward contends the ALJ erred in formulating her RFC by failing to point to any medical opinion evidence in support of the mental RFC, by not fully accounting for her alleged mental limitations and difficulties with concentration, persistence, and pace, and by failing to complete a "function-by-function analysis of [her] work capabilities." Pl. Brief at 9–12. Since, however, her case is remanded for consideration of Dr. Cogburn's opinion as it relates to her ability to function in the workplace, the Court does not reach any of Ward's arguments about the sufficiency of the ALJ's RFC at this time.

//

//

**CONCLUSION**

For the reasons stated, the Commissioner's decision is REVERSED, and this case is REMANDED to the Agency for further administrative proceedings. On remand, an ALJ should address Dr. Cogburn's report and determine whether, after taking his assessment into consideration, the original decision finding Ward not disabled should be set aside.

IT IS SO ORDERED.

Dated this _____ day of _____, 2015.

_____
MARCO A. HERNÁNDEZ
United States District Judge